UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JOHN DUFFY III, on behalf of plaintiff and the
class members described herein,

                               Plaintiff,

      -against-

ILLINOIS TOOL WORKS INC. and
SOUTH/WIN LTD.,

                              Defendants.
----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
15-cv-7407(JFB)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this diversity jurisdiction products liability action is Plaintiff John Duffy III's ("Plaintiff" or "Duffy") motion to compel. *See* Docket Entry ("DE") [21]. By way of Complaint filed on December 30, 2015 and amended on February 12, 2016, Plaintiff commenced this putative class action against Defendants Illinois Tool Works, Inc. ("ITW") and South/Win, LTD ("SWL") (collectively "Defendants") alleging state-law claims for: (1) products liability; (2) negligence; and (3) deceptive business practices and false advertising under New York General Business Law ("N.Y. Gen. Bus. L.") §§ 349-50.[1] *See* Complaint ("Compl."), DE [1]; Amended Complaint ("Am. Compl."), DE [21]. On July 21, 2017, Duffy filed the instant motion to compel seeking: (i) the formula for Rain-X© windshield washer fluid ("Rain-X"), the product at issue; and (ii) the contact information of Rain-X purchasers who complained to Defendants about the product. *See* DE [56]. For the

---

[1] Duffy originally sought injunctive relief and asserted a breach of warranty claim against Defendants. *See generally* Compl. However, Judge Bianco subsequently dismissed these claims in prior proceedings. *See* Order dated November 1, 2016, DE [35].

1

reasons set forth herein, Plaintiff's motion to compel is granted in part and denied in part. Specifically, the portion of Duffy's motion seeking the formula for Rain-X is granted. Further, the parties are directed to submit a modified Stipulated Protective Order ("SPO") restricting access to the formula solely to Plaintiff's counsel and Plaintiff's expert, Meyer R. Rosen ("Rosen"), within thirty days of this Order. Consistent with the above, Defendants are directed to provide supplemental responses thirty days thereafter to Plaintiff's Interrogatories Nos. 3, 12, and 20 and Plaintiff's Requests for Production Nos. 1, 2, 3, 12, 18, 19, and 22. However, the portion of Plaintiff's motion seeking the unredacted contact information of complaining Rain-X consumers is denied.

## I. Background

Plaintiff Duffy claims that Rain-X damages certain windshield washer systems, including the one on his car, and on that basis commenced this putative class action against Defendants ITW and SWL.[2] *See generally* Am. Compl. ITW controls the formula and package graphics for Rain-X, while SWL is the exclusive licensee for the manufacture and distribution of Rain-X products throughout the United States. *See id.* ¶¶ 6-7. Duffy alleges, *inter alia*, that Defendants failed to warn consumers that the product should not be used in certain vehicles and that other non-damaging formulations for Rain-X were available to Defendants. *See id.* ¶ 17.

---

[2] Duffy is a citizen of New York and ITW and SWL are Delaware and North Carolina corporations, respectively. *See* Am. Compl. ¶¶ 5-8. As a result, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Plaintiff claims that he purchased Rain-X for use in his car's windshield washer system, which has a continuity prong sensor. *See id.* ¶ 38. Continuity prong sensors detect the presence of washer fluid by allowing the liquid to complete an electrical circuit between two metal prongs. *See id.* ¶ 23. Specifically, an electrical circuit is created between the prongs when they are immersed in washer fluid. *See id.* ¶ 24. When the liquid falls below the level of the prongs the electrical circuit is broken, which triggers a warning light on the dashboard. *Id.*

Duffy claims that Rain-X fluid reacts with and/or coats the sensor's metal prongs with chemical compounds triggering a "low fluid warning light, which remains illuminated whether or not washer fluid is present." *Id.* ¶ 42. Consistent with the above, Plaintiff's continuity prong sensor malfunctioned by showing a low fluid level warning despite the presence of sufficient washer fluid. *Id.* ¶ 42. Duffy also asserts that Rain-X corroded his vehicle's sensor and that he was forced to pay $157.51 to fix the damage. *Id.* ¶¶ 43, 47. Plaintiff alleges that Defendants have known about this issue—via direct consumer complaints—since at least 2009, and should be held liable accordingly. *See id.* ¶ 26.

## II. Procedural History

Based on the foregoing, by way of Complaint filed on December 12, 2015, which was amended on February 12, 2016, Duffy commenced the instant action. *See generally* Am. Compl. Duffy asserts, individually and on behalf of a putative class, the following state-law causes of action for: (1) products liability; (2) negligence; and

(3) deceptive business practices and false advertising under N.Y. Gen. Bus. L. §§ 349-50. *See id.*

During litigation, the parties filed their SPO, which the Court So Ordered on June 14, 2017. *See* DE [51, 52]. The SPO provides, among other things, that discovery designated as confidential shall not be publicly disclosed, and may not be used for any business or commercial purpose. *See* SPO ¶¶ 1-2. Included within the definition of confidential materials are "previously nondisclosed materials constituting or containing trade secrets . . . ." *Id.* ¶ 3(c). The SPO also requires experts to maintain confidential materials in a "manner calculated to prevent public disclosure." *Id.* ¶ 8(e)(i). Finally, the SPO requires that within forty-five days of the conclusion of litigation, all material designated as confidential shall be destroyed. *See id.* ¶ 16.

Plaintiff thereafter propounded certain discovery requests, which *inter alia*, seek the formula for Rain-X and prior consumer complaints. Specifically, at issue here, Duffy demanded responses to the following interrogatory requests about the underlying formula for Rain-X:

(a) **Plaintiff's Interrogatory No. 3**: Describe in detail the Rain-X Windshield Washer fluid Product design, including all ingredients.

(b) **Plaintiff's Interrogatory No. 12**: Identify the ingredients and manufacturing process of the Rain-X water beading technology.

(c) **Plaintiff's Interrogatory No. 20**: State how Rain-X differs chemically from its competitors.

Plaintiff's requests for production sought the following documents related to the Rain-X:

4

(a) **Plaintiff's Request for Production No. 1**: The complete design file of Rain-X Windshield Washer Fluid.

(b) **Plaintiff's Request for Production No. 2**: The revisions of all Rain-X Windshield Washer Fluid formulas.

(c) **Plaintiffs Request for Production No. 3**: All engineering change notices of Rain-X Windshield Washer Fluid.

(d) **Plaintiff's Request for Production No. 12**: The complete contents list for Rain-X Windshield Washer Fluid.

(e) **Plaintiff's Request for Production No. 18**: A list of the chemicals or compounds which provides [sic] water beading technology to Rain-X Windshield Washer Fluid.

(f) **Plaintiff's Request for Production No. 19**: A list of the Rain-X Windshield Washer Fluid chemicals or compounds which provides for removal of bugs and road grime.

(g) **Plaintiff's Request for Production No. 22**: A list of Alcohols used in Rain-X Windshield Washer Fluid.

Further, Plaintiff requested the following information about consumers who communicated with Defendants about damage to their vehicles purportedly caused by Rain-X:

(a) **Plaintiff's Interrogatory No. 4**: Identify any and all complaints from any source (including from automotive dealerships, repair shops, vehicle technicians, social media, websites and consumers) received by Defendants concerning Rain-X causing damage to a vehicle's continuity prong washer sensor.

(b) **Plaintiff's Interrogatory No. 5**: How are records created and stored of each written (including correspondence received online, via social media and Defendants' websites) and oral communication between You and a consumer? If any records are stored in an electronic database, include a list of each field in the database.

(c) **Plaintiff's Interrogatory No. 16**: State whether, at the time that Defendants first became aware that Rain-X had been alleged to damage continuity prong washer sensors, defendants or any other persons acting on their behalf, examined Rain-X or any of its

5

ingredients, and if so describe the nature and results of each examination, identify the person who performed it, and identify each document that refers to it.

(d) **Plaintiff's Interrogatory No. 18**: State the amounts and recipient(s) of all monies refunded by each Defendant in response to any complaint(s) that Rain-X caused damages to a vehicle's continuity prong washer sensor. State the monetary amount of damages claimed by each consumer and or vehicle repair or servicing facility claiming that Rain-X damaged a vehicle's continuity prong windshield washer fluid sensor. [3]

Finally, Duffy requested the production of the following documents:

(a) **Plaintiff's Request for Production No. 5**: All Complaint Reports and Records for Rain-X Windshield Washer Fluid.

(b) **Plaintiff's Request for Production No. 6**: All reports or problems in complaint to Rain-X Windshield Washer Fluid from the internet or third party.

(c) **Plaintiff's Request for Production No. 9**: All service/repair records for vehicles damaged by Rain-X Windshield Washer Fluid. [4]

(d) **Plaintiff's Requests for Production No. 25**: The Telephone Call Log of complaints regarding Rain-X Windshield Washer Fluid. [5]

(e) **Plaintiff's Requests for Production No. 26**: The Social Media posts of those complaining about Rain-X Windshield Washer Fluid.

(f) **Plaintiff's Requests for Production No. 27**: Electronic mail complaints concerning Rain-X Windshield Washer Fluid.

Defendants responded by: (i) objecting to the production of the formula; and (ii) producing the complaints, but redacting the names and contact information of complainants. Now, Duffy seeks an order compelling Defendants to supplement their respective responses by providing: (i) the chemical composition and ingredients of all

---

[3] Duffy only seeks a supplemental response from STW as to Plaintiff's Interrogatory No. 18.
[4] Plaintiff similarly demands a supplemental response only from STW as to Plaintiff's Request for Production No. 9.
[5] Duffy requests a supplemental response from ITW as to Plaintiff's Requests for Production No. 25.

versions of Rain-X; and (ii) and the unredacted names and contact information of consumers who complained about the product beginning in January 2008. *See* Plaintiff's Motion to Compel ("Pl.'s Mem."), DE [56].

### III. Legal Standard

A. <u>Discovery Standards</u>

Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Information "is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Further, Federal Rule 34 requires a party to produce all responsive documents within the scope of Rule 26 within its "possession, custody, or control." *See* Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control . . . ."). Finally, it is well-established that "[m]otions to compel are left to the court's sound discretion." *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see also Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867,

7

2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

B. <u>Protective Orders</u>

"Protective orders serve essential functions in civil adjudications, including the protection of the parties' privacy and property rights." *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 414 (E.D.N.Y. 2007), *judgment entered sub nom. In re Zyprexa Litig.*, No. 07-cv-0504, 2007 WL 669797 (E.D.N.Y. Mar. 1, 2007), *and aff'd sub nom. Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35, 104 S.Ct. 2199, 2208 (1984)). Rule 26(c) governs a court's power to issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . . " Fed. R. Civ. P. 26(c)(1). Under Rule 26(c)(1)(G), the court may also, for good cause, issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G); *see also Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*, No. 15-cv-2044, 2016 WL 4618972, at *2 (S.D.N.Y. Sept. 2, 2016) ("[C]ourts may enter a protective order, including forbidding the disclosure or discovery sought, prescribing a discovery method other than the one selected by a party, or designating the persons who may be present while the discovery is conducted.").

**IV. Discussion**

Applying the standards outlined above, and for the reasons set forth herein, Plaintiff's motion to compel is granted in part and denied in part. Specifically, the

8

portion of Duffy's motion seeking the formula of Rain-X is granted. Further, the parties are directed to submit a modified SPO restricting access of the Rain-X formula to Plaintiff's counsel and his expert Rosen within thirty days of this Order. Defendants are also directed to provide supplemental responses within thirty days thereafter to Plaintiff's Interrogatories Nos. 3, 12, and 20 and Plaintiff's Requests for Production Nos. 1, 2, 3, 12, 18, 19, and 22. However, the portion of Duffy's motion seeking the unredacted contact information of complaining consumers is denied.

Initially the Court notes that, because Plaintiff asserts diversity jurisdiction under 28 U.S.C. § 1332, the Court applies the substantive law of the forum state, which in this case is New York. *See*, *e.g.*, *Brink's Ltd. v. S. African Airways*, 93 F.3d 1022, 1030 (2d Cir. 1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822 (1938)). However, contrary to ITW's contention, as to procedure, the Federal Rules of Civil Procedure apply. *See generally Burlington N. R.R. v. Woods*, 480 U.S. 1, 5, 107 S.Ct. 967, 969 (1987) (discussing the ability of the Federal Rules of Civil Procedure to regulate procedural litigation issues). Relevant here, Rule 26 specifically regulates procedural issues regarding the disclosure of trade secrets. *See* Fed. R. Civ. P. 26(c)(1)(G) (providing that a court may order that trade secrets be not revealed at all or be revealed "only in a specified way"). Accordingly, while the Court applies the New York substantive law in defining Rain-X's formula as a trade secret, it looks to the Federal Rules of Civil Procedure as to its discoverability.

A. Rain-X Formula

In consideration of the above, the Rain-X formula, which is a trade secret, should be disclosed. Under New York Law, a trade secret is defined as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Dauphin v. Crownbrook ACC LLC*, No. 12-cv-2100, 2014 WL 2002822, at *8 (E.D.N.Y. May 15, 2014) (citing Restatement of Torts § 757 cmt. b, at 5 (1939)). Here, it is undisputed that the Rain-X formula is trade secret.

However, "there is no absolute privilege for trade secrets." *Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc.*, 236 F.R.D. 129, 136 (E.D.N.Y. 2006) (internal citations omitted). Further, "orders forbidding any disclosure of trade secrets or confidential commercial information are rare." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 363, 99 S. Ct. 2800, 2813 (1979). To that end, "[t]he disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets." *In re The City of New York*, 607 F.3d 923, 935-36 (2d Cir. 2010); *see also Vesta Corset Co. v. Carmen Foundations, Inc.*, No. 97-cv-5139, 1999 WL 13257, at *3 (S.D.N.Y. Jan. 13, 1999) ("Protective orders that limit access to certain documents to counsel and experts are commonly entered in litigation involving trade secrets."). Further, "[n]otwithstanding the issuance of any protective order, the court possesses the power to modify it, even over the objection of one of the parties initially agreeing to its entry. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141 (2d Cir. 2004).

10

Here, the Rain-X formula is relevant and its disclosure is proportional to the needs of the case. Plaintiff, among other things, brings a products liability claim alleging that a component of the product creates an electrochemical reaction, which damages personal property, and that other non-damaging formulations were available to Defendants. To that end, Duffy seeks to conduct a qualitative and quantitative analysis of Rain-X's formula to identify the key ingredient(s) causing the purported damage and its respective concentration within the product.

Specifically, Plaintiff's expert Rosen states that, contrary to Defendants' suggestion, production of bottles of Rain-X are insufficient to conduct the analysis with the requisite level of scientific certainty as "multiple ingredients in the same product interfere with identifying" the key ingredient. Further, according to Rosen—and undisputed by Defendants—reverse-engineering the Rain-X formula will be costly and introduce measurement errors as to the proportion of each ingredient in the formula. Accordingly, disclosure of the formula is warranted.

However, considering the sensitive nature of the formula, the Court finds that a modification of the SPO is necessary to adequately protect the confidentiality of Defendants' trade secret information. *See Heublein, Inc. v. E & J Gallo Winery, Inc.*, No. 94-cv-9155, 1995 WL 168846, at *2 (S.D.N.Y. Apr. 7, 1995); *see also Coca–Cola Bottling Co. v. Coca–Cola Co.*, 107 F.R.D. 288 (D.Del. 1985)(ordering the disclosure of "one of the best-kept trade secrets in the world," the formula for Coca–Cola, in order to resolve a pricing agreement dispute). Therefore, access to Rain-X's formula should be restricted to Plaintiff's counsel and Plaintiff's expert only. *See Errant Gene*

*Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*, No. 15-cv-2044, 2016 WL 4618972, at *3 (S.D.N.Y. Sept. 2, 2016) ("Protective orders limiting access to highly confidential information to counsel and experts are commonly entered in litigation involving trade secrets and other confidential research, development, or commercial information.") (internal citations omitted). Accordingly, the parties are directed to submit a modified SPO incorporating the disclosure of the Rain-X formula and restricting access to Plaintiff's counsel and Rosen within thirty days of this Order. Consistent with this Order, Defendants are also directed to supplement their responses thirty days thereafter to Plaintiff's Interrogatories Nos. 3, 12, and 20, and Plaintiff's Requests for Production Nos. 1, 2, 3, 12, 18, 19, and 22.

B. <u>Rain-X Customer Contact Information</u>

Plaintiff, however, is not entitled to the unredacted information concerning third-parties at this time. The Second Circuit has held that the privacy interests of innocent third parties should weigh heavily in a court's decision as to whether to withhold confidential information. *See United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995). Further, private individuals have a privacy interest in avoiding disclosure of their names and addresses. *See Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 87 (2d Cir. 1991); *Mitchell v. Metro. Life Ins. Co.*, No. 03 CIV.10294, 2004 WL 2439704, at *2 (S.D.N.Y. Nov. 2, 2004) (holding that personnel files containing personal identifying information of non-parties are to remain confidential). Moreover, "[i]t is assumed that, in general, a purchaser of any

commodity has a desire for privacy. *Johnson v. Bryco Arms*, 224 F.R.D. 536, 542 (E.D.N.Y. 2004).

Consistent with these concepts, the Supreme Court has held that the pre-certification production of class members' names is not compatible with Federal Rule 26's "relevancy" standard. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389 (1978) (holding that that the production of putative class members' names pursuant to Federal Rule 26 was not "within the scope of legitimate discovery.") Accordingly, "[c]ourts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification." *Dziennik v. Sealift, Inc.*, No. 05-cv-4659, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) (approving redaction of personal identifying information from employment contracts produced in the action).

Here, Duffy has failed to proffer a concrete justification for the disclosure of unredacted complainant contact information. Significantly, Defendants' discovery responses provide not only the substance of the customers' feedback, but also balance third-party privacy interests by redacting names and contact information. Plaintiff's submissions however, are silent as to how unredacted contact information is specifically relevant at this stage of the litigation. These individuals are not fact-witnesses to Duffy's claims. Nor will their contact information establish the appropriateness of class certification. Instead, Plaintiff effectively seeks access to prospective putative class members, which necessarily implicate concerns regarding

13

potential client recruitment. Therefore, the redactions of specific customer information are proper. Accordingly, the portion of Plaintiff's motion seeking the unredacted contact information of complaining consumers is denied.

## V.  Conclusion

Based on the foregoing, Plaintiff's motion to compel is granted in part and denied in part. Specifically, the portion of Duffy's motion seeking access to the formula of Rain-X is granted. Further, the parties are directed to submit a modified SPO restricting access of the Rain-X formula to Plaintiff's counsel and Rosen within thirty days of this Order. Consistent with the above, within thirty days thereafter, Defendants are directed to provide supplemental responses to Plaintiff's Interrogatories Nos. 3, 12, and 20 and Plaintiff's Requests for Production Nos. 1, 2, 3, 12, 18, 19, and 22. The portion of Plaintiff's motion seeking the unredacted contact information of Rain-X consumers is denied.

Dated: Central Islip, New York
      March 15, 2018

                                        /s/ Steven I. Locke
                                        STEVEN I. LOCKE
                                        United States Magistrate Judge