UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

JOHN DUFFY III, individually and on behalf of
all others similarly situated,

                              Plaintiffs,

                 -against-

ILLINOIS TOOL WORKS, INC., and
SOUTH/WIN LTD.,

                            Defendants.
_____

**MEMORANDUM & ORDER
15-CV-7407 (NGG) (SIL)**

NICHOLAS G. GARAUFIS, United States District Judge.

John Duffy III ("Plaintiff" or "Named Plaintiff") brings this action on behalf of himself and putative class members, alleging strict products liability, negligence, and violations of New York General Business Law ("N.Y. G.B.L.") §§ 349, 350, against Illinois Tool Works, Inc. ("ITW") and South/Win, Ltd. (collectively, "Defendants").

       Pending before the court is Plaintiff's Motion for Class Certification. (*See* Renewed Mot. for Class Cert. ("Cert. Mot.") (Dkt. 105); Mem. in Supp. of Mot. for Class Cert. ("Mot.") (Dkt 106); Mem. in Opp. to Mot. for Class Cert. ("Opp.") (Dkt. 107).) For the reasons that follow, Plaintiff's motion is GRANTED.

## I.   BACKGROUND

All car owners are familiar with windshield washer systems. Although these systems may not be top-of-mind when purchasing a car, they are an essential safety feature required in all modern vehicles. (*Id.* ¶¶ 10-12.) These systems clean your windshield with the help of windshield washer fluid. (*Id.* ¶ 12.) Drivers typically pour windshield wiper fluid into the windshield fluid reservoir, which, once filled, allows the system to function. (*Id.*)

Many modern windshield washer systems also notify the driver when the windshield wiper fluid is low. (*Id.* ¶ 13.) To carry out this function, some car manufacturers like Audi, BMW, Chrysler, and Volkswagen, among others, use a continuity prong sensor. (*Id.* ¶ 22.) A continuity prong sensor is an electrical device in the windshield fluid reservoir that detects the presence of washer fluid by allowing the liquid to complete an electrical circuit between two metal prongs. (*Id.* ¶¶ 23-24.) When the fluid reservoir drops below a certain level, the electrical circuit is broken, which triggers a low-fluid warning light on the dashboard. (*Id.*)

Rain-X is a premium windshield washer fluid, which causes water to bead up and be repelled from windshields. (*Id.* ¶¶ 16-17; Cert. Mot. ¶ 2.) ITW controls the formula and packaging for Rain-X, and South/Win is the exclusive licensee for the manufacture and distribution of Rain-X products in the United States. (Am. Compl. ¶¶ 6-7.) This case is about how Rain-X interacts with continuity prong sensors.

Plaintiff claims that he purchased Rain-X and poured it into his car's windshield washer system, which was equipped with a continuity prong sensor. (*Id.* ¶¶ 38-41.) He claims that the Rain-X fluid reacted with the sensor's two metal prongs, causing the sensor to malfunction by triggering the low-fluid warning light despite the fluid reservoir being filled. (*Id.* ¶¶ 42-44; Cert. Mot. ¶¶ 9-10.) As a result, Plaintiff alleges that he paid $157.51 to repair the sensor. (Am. Compl. ¶ 47.)

Plaintiff claims that Defendants created the issue when they changed the Rain-X formula for increased water repellency. (*Id.* ¶¶ 26, 30; Cert. Mot. ¶ 3.) He further claims that Defendants knew Rain-X was incompatible with continuity prong sensors no later than February 2014 yet continued to sell Rain-X and failed to warn consumers or disclose the problem. (Am. Compl. ¶¶ 30-35; Cert. Mot. ¶¶ 3-6.)

Based on the foregoing, Plaintiff filed a Complaint on December 30, 2015, which was amended on February 12, 2016. After discovery and motion practice, Plaintiff filed a Renewed Motion for Class Certification on August 31, 2020. Significantly, Plaintiff compelled Defendants to provide his expert with Rain-X formula (the original formula and revised formula), which provided the basis for expert reports by both parties. (*See* Memorandum & Order (Dkt. 68); Rep. of Expert Wit. Meyer Rosen ("Pl.'s Expert Rep.") (Dkt. 106-2) at 9; Decl. of Mark Weyman, Rep. of Expert Wits. Anthony Revis and Raymond Tabler ("Defs.' Expert Rep.") (Dkt. 107-1) at ECF pp. 94-95; Supp. Rep. of Meyer Rosen (Dkt 109-1).) Plaintiff alleges that Rain-X affected thousands of people; he now seeks certification of the following class:

> (a) all persons (b) with vehicles (c) that are equipped with continuity prong windshield washer fluid sensors (d) who purchased and used Rain-X windshield washer fluid in such vehicles (e) whose continuity prong windshield washer sensor in such vehicles was then repaired or replaced anytime after December 30, 2012 and before January 1, 2017 (f) if either the vehicle was registered in New York, the repairs were done in New York, or the Rain-X was purchased in New York.

(See Cert. Mot. at 1; Reply in Supp. of Mot. for Class Cert. ("Reply") (Dkt 109) at 6-7.) On behalf of the class, Plaintiff seeks actual and punitive damages for the negligence and products liability claim (Am. Compl. at 14, 17), actual damages, attorneys' fees and costs, and statutory damages of $50 per purchase for a violation of N.Y. G.B.L § 349, and attorneys' fees and costs and statutory damages of at least $500 per purchase for a violation of N.Y. G.B.L. § 350 (*Id.* at 19, 22).

## II.   DISCUSSION

### A.   Standing: Article III and Class Action

#### 1.   Legal Standard

"Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009).[1] Standing requires "a 'sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.'" *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526-27 (2d Cir. 1999) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 731 (1972)). "The filing of suit as a class action does not relax this jurisdictional requirement." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006).

To establish Article III standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "For purposes of determining standing, [the court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party (*i.e.*, the class members)." *Denney*, 443 F.3d at 263. This standing inquiry focuses on the class representative.

The Second Circuit also requires that "no class may be certified that contains members lacking Article III standing." *Id.* at 264. This class-standing inquiry "do[es] not require that each member of a class submit evidence of personal standing," but that "[t]he class must [] be *defined* in such a way that anyone within it would have [Article III] standing." *Id.* at 263-64 (emphasis added)

---

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

("[P]assive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court."). Accordingly, courts "look[] to the class definition and Plaintiffs' allegations." *Decastro v. City of New York*, No. 16-cv-3850 (RA), 2019 WL 4509027, at *4 (S.D.N.Y. Sept. 19, 2019) (citing *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 532 (S.D.N.Y. 2018)).

Once Article III standing is satisfied for the named plaintiff and the class, "the inquiry shift[s] to a class action analysis and the question of class standing, which refers to a named plaintiff's ability to assert claims on behalf of absent class members." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 459 (S.D.N.Y. 2018) (citing *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2d Cir. 2012)). "In a putative class action, a plaintiff has class standing if they allege (1) that they have "suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant," and (2) that such conduct "implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 334–35 (S.D.N.Y. 2021) (citing *NECA-IBEW Health & Welfare Fund*, 693 F.3d at 162). This standard, derived from constitutional standing principles yet distinct from Article III standing itself, "serves to ensure that the named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members that the named plaintiff may properly assert claims on their behalf." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d at 459.

2. Application

Plaintiff satisfies Article III standing. He alleges that he suffered an injury caused by Defendants that is capable of redress, and the class is defined so that each member has standing. (*See* Compl. ¶¶ 32-35; Am. Compl. ¶¶ 38-44, 46-47.) Plaintiff satisfies class standing for substantially the same reasons.

Defendants argue that Plaintiff lacks standing because he filed the original complaint before incurring out-of-pocket costs to repair the defective fluid sensor. (Opp. at 9.) Thus, Plaintiff alleges no monetary damages in the original complaint. (*See* Compl. ¶¶ 32-35.) And so, Defendants contend that Plaintiff suffered no injury in fact under Article III at the time of suit. (Opp. at 9.) But Defendants' argument conjures a pecuniary harm element not required by Article III standing, eliding the meaning of "injury in fact." It would be as if one could break their arm but have no injury until after the hospital bill arrives.

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.*, 136 S. Ct. at 1548. "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* "A concrete injury must be *de facto*; that is, it must actually exist." *Id.*

"[C]ertain harms readily qualify as concrete injuries under Article III." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). "The most obvious are traditional tangible harms, such as physical harms and monetary harms." *Id.* "If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Id.*

"In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a de facto injury merely from having his personal, legal rights invaded." *Spokeo, Inc.*, 136 S. Ct.

at 1551 (Thomas, J., concurring). "Thus, when one man placed his foot on another's property, the property owner needed to show nothing more to establish a traditional case or controversy." *Id.* (citing *Entick v. Carrington*, 2 Wils. K.B. 275, 291 (1765)). Moreover, "[m]any traditional remedies for private-rights causes of action . . . are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right." *Id.* And "the fact that an injury may be outweighed by other benefits, while often sufficient to defeat a claim for damages, does not negate [Article III] standing." *Denney*, 443 F.3d at 265.

Here, Plaintiff alleges an injury in fact. Plaintiff suffered a concrete and particularized harm when, as alleged, he purchased Rain-X, used it in his Audi, and it caused his car's continuity prong windshield wiper fluid sensor to malfunction. (*See* Compl. ¶¶ 32-35.) This generated a present, actual injury—an invasion of a protected property right. Therefore, Plaintiff satisfies the injury-in-fact requirement for Article III standing.[2]

---

[2] In his amended complaint, Plaintiff alleges a monetary harm of $157.51 resulting from his sensor repair. (Am. Compl. ¶ 47.) Although the Second Circuit has not yet addressed directly whether a claimant may cure a standing defect through an amended pleading, alleging facts that occurred after the filing of the original complaint, the Circuit has endorsed this rule in *dicta*, *see Travelers Ins. Co. v. 633 Third Assocs.*, 973 F.2d 82, 87-88 (2d Cir. 1992), and in citing favorably to its sister circuits' decisions, holding that a plaintiff maintains the ability to do just that, *see Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 390-91 (2d Cir. 2021) (citing *Scahill v. District of Columbia*, 909 F.3d 1177, 1184 (D.C. Cir. 2018) (holding that "a plaintiff may cure a standing defect under Article III through an amended pleading alleging facts that arose after filing the original complaint"); *Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1044 (9th Cir. 2015) (concluding that requiring the plaintiff to start a new case would be needlessly formal where the district court permitted the plaintiff to file a supplemental pleading under Rule 15(d) to satisfy Article III's injury-in-fact requirement); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008) (concluding that the status of the

Defendants also argue that the class lacks standing because "the proposed class does not require putative class members actually to have been injured by the allegedly defective product." (Opp. at 13.) Specifically, Defendants argue that the class contains members who lack standing because the class definition "does not screen out members whose repair costs were covered by a manufacturer's warranty, extended warranty, through insurance or who have otherwise been compensated for any damage suffered." (Opp. at 12.) This argument misses the mark.

The standing inquiry as to absent class members is limited to the class definition. *See Denney*, 443 F.3d at 264 ("The class must therefore be *defined* in such a way that anyone within it would have standing.") (emphasis added). Here, under the class definition, each class member has suffered a monetary harm, because all class members are required to have repaired or replaced their continuity prong windshield wiper fluid sensor. Thus, as defined, all class members satisfy Article III standing.

Defendants fail to proffer evidence to support their assertion that a significant number of class members (or even a single class member) had their sensor repairs or replacements paid for. (*See*

---

plaintiff's Article III standing should be decided based on the allegations in the amended complaint, included allegations that concerned events that occurred after the case was initiated)); *see also See Mathews v. Diaz*, 426 U.S. 67, 75 & n.8 (1976).

As these decisions recognize, a rule that allows a claimant to cure Article III standing through an amended pleading strikes a sensible balance, which supports, rather than nullifies, Federal Rule of Civil Procedure 15(d). When a plaintiff is granted leave to amend a pleading, the amended pleading becomes the operative document. It would be anomalous for a court to grant leave to amend a pleading, only to ignore it in determining standing, yet rely on it in deciding a motion for class certification. A contrary rule would disserve judicial administration, waste the parties' resources, and undermine the purposes of Rule 15(d). Accordingly, the court finds that Plaintiff satisfies Article III's standing requirement in his amended complaint.

Opp. at 12-13.) Rather, Defendants rely on speculation. Even as to customers that Defendants claim to have compensated based on their direct complaints, Defendants provide no evidence as to how many claimants were compensated or even what these claimants were compensated for, *i.e.*, whether Defendants compensated such customers for the full price of repair, for their Rain-X purchase, or both, or something else altogether. Because Defendants offer only conjecture to undermine the standing of all class members, this challenge to class standing fails. There is no need to address Defendants' contention that payment by a third-party to compensate an injury allegedly caused by Defendants would negate Article III standing under the circumstances of this case.

Finding that Article III standing is satisfied as to Plaintiff and the class, the court turns to class standing. Plaintiff satisfies class standing because he plausibly alleges (1) that he personally has suffered an actual injury as a result of the conduct of Defendants, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants. Here, Plaintiff's case aligns neatly with the interests of the class.

### B. Federal Rule of Civil Procedure 23: Class Certification

"When making the Rule 23 determination, district courts 'must assess all of the relevant evidence admitted at the class certification stage.'" *Meyer v. U.S. Tennis Ass'n*, 297 F.R.D. 75, 81 (S.D.N.Y. 2013) (quoting *In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006)). "A plaintiff's pleadings are taken as true for the purposes of examining a class certification motion." *Id.* at 82 (citing *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978)). But Rule 23 "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Instead, the party seeking

class certification must affirmatively demonstrate . . . compliance with the Rule, and a district court may only certify a class if it is satisfied, after a rigorous analysis, that the requirements of Rule 23 are met." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 404 (S.D.N.Y. 2015) (citing *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237-38 (2d Cir. 2012)).

"Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013). Ultimately, though, "[t]he dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 66 (E.D.N.Y. 2014). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

## C.   Rule 23(a) Requirements

Rule 23(a) imposes four prerequisites to certification: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). The Second Circuit has also recognized an implied requirement of ascertainability. *See In re Petrobras Sec.*, 862 F.3d 250, 265 (2d Cir. 2017). Plaintiffs must demonstrate by a preponderance of the evidence that the requirements of Rule 23 have been met. *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

1. Rule 23(a)(1): Numerosity

   a. *Legal Standard*

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Numerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). The precise number of class members need not be established, "so long as plaintiffs reasonably estimate the number to be substantial." *Mendez v. MCSS Rest. Corp.*, No. 16-cv-2746 (NGG) (RLM), 2019 WL 2504613, at *7 (E.D.N.Y. June 17, 2019). "Plaintiffs . . . may rely on reasonable inferences drawn from the available facts," *Morales v. Rochdale Vill.*, Inc., No. 15-cv-502 (RJD) (SJB), 2018 WL 4522084, at *9 (E.D.N.Y. Aug. 1, 2018), *report and recommendation adopted*, No. 15-cv-502 (RJD) (SJB), 2018 WL 4697271 (E.D.N.Y. Sept. 28, 2018), and the court may "make common sense assumptions regarding numerosity." *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd*, 838 F.3d 223 (2d Cir. 2016).

   b. *Application*

Plaintiff alleges that the class numbers in the "low thousands." (Cert. Mot. ¶ 12; Am. Compl. ¶ 78.) In reaching this estimate, Plaintiff relies on several pieces of evidence: customer complaints made directly to Defendants (*See* Mot. at 5; Cert. Mot. ¶ 13; ITW Customer Complaints (Dkt. 106-7); South/Win Customer Complaints (Dkt. 106-8)); a Volkswagen Report of 282 warranty claims from New York State (*See* Mot. at 5; Cert. Mot. ¶ 14; Volkswagen Claims Chart (Dkt. 106-9))[3]; a Chrysler Report of over a thousand claims of sensor damage from New York State

---

[3] Plaintiff has also submitted two pages from a spreadsheet containing Volkswagen warranty claims. (*See* Volkswagen Spreadsheet (106-11).) Plaintiff erred in submitting this Exhibit, because, as depicted, it appears to show only services completed in Massachusetts and Illinois. Therefore, this spreadsheet does not support numerosity.

(*See* Mot. at 5; Cert. Mot. ¶ 14; Chrysler Claims Chart (106-10)); the fact that Volkswagen and Chrysler had enough clams to issue a technical service bulletin on how to repair a fluid sensor damaged by Rain-X (*See* Mot. at 5; Am. Compl. at ¶ 28; Deposition of James Stone ("Stone Dep.") (Dkt. 106-3) at 54-55, 82.); and from Defendants' large share of the premium windshield washer fluid market (*See* Mot. at 6; Stone Dep. at 10, 13-14). Based on this evidence, Plaintiff's estimate is reasonable and satisfies numerosity.

Defendants argue that Plaintiff fails to satisfy numerosity because he relies on "mere speculation to estimate the size of the class" and the exhibits relied upon make no reference to Rain-X, lack a sufficient nexus to New York, and lack proof of damages. (Opp. at 3.)[4] Taking these arguments in turn, the court finds them unpersuasive.

As to the customer complaints, Defendants argue that the ITW complaints identify no claimants connected to New York, and the South/Win complaints identify only five claimants connected to New York. (Opp. at 18.) These complaints identify multiple claimants—including five claimants in New York (not including Named Plaintiff)—all alleging to have suffered the same defect after using Rain-X. (*See* ITW Customer Complaints; South/Win Customer Complaints.) On their own, however, these complaints do not support Plaintiff's numerosity estimate. That said, Plaintiff possesses only redacted information from these claimants, *see* Memorandum & Order (Dkt. 68) (denying motion to compel contact information of Rain-X purchasers who complained to Defendants about the product); thus, Defendants, who have access

---

[4] Defendant also argues that the Volkswagen and Chrysler charts are inadmissible. This argument is without merit. (*See* Deposition of Khaldoon Tufail ("Tufail Dep.") (Dkt. 109-3) at 41-42, 46-47 (Dkt. 109-3) (testifying about the Volkswagen chart); Deposition of Asad Kahn ("Khan Dep.") (Dkt. 109-2) at 44-45 (testifying about the Volkswagen chart).)

to unredacted customer information, are in a better position than Plaintiff to determine whether these customers have a requisite connection to New York. *See Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 504-05 (S.D.N.Y. 2011) ("The Court is sensitive to the fact, however, that [defendant] is in a much better position than [plaintiff] to provide hard data" to support numerosity.).

As to the Volkswagen chart identifying 282 warranty claims from New York, Defendants argue that the document provides no support because it does not contain dates, a reference to Rain-X or two-prong sensors, and fails to establish that the claimant resides in New York or purchased Rain-X in New York. (Opp. at 18-19.) Here, Defendants ignore that such claims were made at Volkswagen dealers in New York, and common sense suggests that most car owners would service their cars where they reside. (*See also* Tufail Dep. at 41-42, 46-47 (testifying that this chart illustrates warranty claims made in New York between 2013 and 2015).) In its reply brief, Plaintiff also submits a Volkswagen Quality Report. (Volkswagen Quality Analysis Report (Dkt. 109-4).) Appendix A of this report includes ten customer complaints about the sensor issue that Plaintiff complains of, identifying Rain-X as the issue. Five of these complaints occurred in New York. (*See* Volkswagen Quality Analysis Report at 4; Tufail Dep. at 41-42.)

As to the Chrysler chart, Defendants argue that it is insufficient to show numerosity because, "[a]t best, they reflect a number of nationwide complaints on various topics . . . ." (Opp. at 20.) Contrary to Defendants' argument, the Chrysler chart provides that over 1,000 claims originated in New York from vehicles "using 2 pin washer sensors from 2012 to 2014." (*See* Chrysler Claims Chart; Khan Dep. at 44-45.) This chart, showing over 1,000 claims made in New York, is sufficient to satisfy Plaintiff's numerosity estimate.

13

Plaintiff alleges a class in the low thousands and supports this with evidence from various sources, which all tend to support Plaintiff's estimate as reasonable and substantial. *See Pagan v. Abbott Lab'ys, Inc.*, 287 F.R.D. 139, 145 (E.D.N.Y. 2012) ("[I]n assessing numerosity, a court may also make common sense assumptions without the need for precise quantification of the class."). Accordingly, numerosity is satisfied.

### 2. Rule 23(a)(2): Commonality

#### a. *Legal Standard*

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiffs to demonstrate that the class members have suffered the same injury." *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 336 (S.D.N.Y. 2021). "A question is common if it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* ("*In re Payment Card*"), 330 F.R.D. 11, 52 (E.D.N.Y. 2019). "Put differently, the common questions must be able to 'generate common *answers* apt to drive the resolution of the litigation.'" *de Lacour*, 338 F.R.D. at 336 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (emphasis in original)). "Even a single common question will do." *Id.*

The commonality requirement may be met where the individual circumstances of class members differ but their "injuries derive from a unity course of conduct by a single system." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997)). "Typically . . . where the consumer protection statute at issue supplies an objective test, such claims are considered ideal for class certification because they allow the court to adopt classwide presumptions of reliance and do not

require an investigation into class members' individual inter-
action with the product." *Kurtz v. Kimberly-Clark Corp.*, 321
F.R.D. 482, 530 (E.D.N.Y. 2017).

### b.  *Application*

Plaintiff satisfies commonality. All class members have suffered
the same injury: as alleged, their continuity prong windshield
wiper fluid sensors malfunctioned after using Rain-X. And com-
mon questions under Plaintiff's theories of liability are capable of
generating common answers, which would drive the resolution
of this litigation on a classwide basis. Such questions include
whether Rain-X was incompatible with continuity prong wind-
shield wiper sensors during the class period, whether and when
Defendants knew about an incompatibility, whether the sale of
Rain-X without warnings was negligent, whether the sale of
Rain-X without warnings results in liability to persons whose ve-
hicles were damaged for sale of a defective product, how a
reasonable consumer would go about using Rain-X, whether De-
fendants' conduct was reasonable, and whether Defendants'
conduct violated N.Y. G.B.L. §§ 349, 350. Accordingly, common-
ality is satisfied.

### 3.  Rule 23(a)(3): Typicality

### a.  *Legal Standard*

"The typicality prong of Rule 23(a)(3) requires that 'the claims
or defenses of the representative parties [be] typical of the claims
or defenses of the class.'" *In re Payment Card*, 330 F.R.D. at 53
(quoting Fed. R. Civ. P. 23(a)(3)). "Typicality is satisfied when
'each class member's claim arises from the same course of events
and each class member makes similar legal arguments to prove
the defendant's liability.'" *Ebin*, 297 F.R.D. at 565 (quoting *Robi-
doux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). "The purpose
of typicality is to ensure that class representatives have the incen-
tive to prove all the elements of the cause of action which would

be presented by the individual members of the class were they initiating individualized actions." *In re Payment Card*, 330 F.R.D. at 53. "[W]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Pagan*, 287 F.R.D. at 146; *see also Steinberg*, 224 F.R.D. at 72-73 (holding that "[t]he mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification"). "Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding." *In re Payment Card*, 330 F.R.D. at 53

b.  *Application*

Plaintiff satisfies typicality. Under the class definition, Plaintiff's and each class member's claims arise from Rain-X's alleged incompatibility with their continuity prong windshield sensors and depend on Defendants' conduct surrounding the production, marketing, and sale of Rain-X, without warning or disclosure.

Defendants contend that typicality is not satisfied because Plaintiff alleges he relied on Defendants' representations and warranties and that reliance is a required element for claims under N.Y. G.B.L. § 350. (*See* Opp. at 21-22.) This argument is without merit. In short, Defendants misstate the law: "Sections 349 and 350 require neither proof of reliance, nor proof that the defendants intended to mislead consumers." *de Lacour*, 338 F.R.D. at 341 (citing *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741 (N.Y. 1995)). Therefore, Plaintiff's alleged reliance does not render Plaintiff atypical.

Defendants also contend that Plaintiff is subject to unique defenses concerning his personal use of Rain-X. Defendants point to Plaintiff's repeated use of Rain-X between 2014 and 2015

16

(about a dozen times) and argue that frequent use of Rain-X may not be typical of putative class members who may have used the product less frequently. (Opp. at 22.) This argument is misplaced. First, "[i]n analyzing typicality, the Court looks not at the plaintiffs' behavior, but rather at the defendant's actions." *DeCastro*, 2019 WL 4509027, at *9. Next, "[t]he mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification," *de Lacour*, 338 F.R.D. at 337-38, and "the existence of defenses unique to the named plaintiff may preclude class certification only if the unique defenses threaten to become the focus of the litigation." *Kurtz*, 321 F.R.D. at 532-33. Here, Plaintiff's repeated Rain-X use does not present a unique defense that threatens to become the focus of the litigation. Rather, Plaintiff's Rain-X use goes to the core of this suit: whether Rain-X was incompatible in cars with continuity prong windshield sensors. Accordingly, typicality is satisfied.

### 4.   Rule 23(a)(4): Adequacy of Representation

To satisfy that requirement, "the named plaintiffs must possess the same interests and suffer the same injuries as the class members. Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011); *see Lewis v. Alert Ambulette Serv. Corp.*, No. 11-cv-442, 2012 WL 170049, at *11 (E.D.N.Y. Jan. 19, 2012) ("Only a fundamental conflict will defeat the adequacy of representation requirement.").

Plaintiff satisfies adequacy. He alleges to have suffered the same injury as the proposed class. His interests are aligned with the interest of the class. In addition, Plaintiff's counsel are qualified, experienced, and able to conduct litigation, as they have since

2015. (*See* Decl. of Tiffany Hardy (Dkt. 106-12).) Defendants do not contest the adequacy of Plaintiff's counsel.

>    5.   Ascertainability

"Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable, often characterized as an 'ascertainability' requirement." *In re Petrobras Sec.*, 862 F.3d at 265. "The ascertainability requirement . . . asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries." *Id.* at 269.

Plaintiff satisfies the ascertainability requirement because the class is defined only by objective criteria: persons who owned vehicles with continuity prong windshield washer fluid sensors; who purchased and used Rain-X windshield washer fluid; and whose continuity prong windshield washer sensor was then repaired or replaced. (Cert. Mot. at 1.) Defendants' arguments to the contrary, relying primarily on decisions before the Second Circuit clarified the ascertainability requirement in *In re Petrobras Sec.*, 862 F.3d 250, are unpersuasive. (*See* Opp. at 16-17.)

Moreover, in response to Defendants' contention that the class lacks definite boundaries, Plaintiff has proposed additional language to provide a temporal limitation and further clarify the class. *See Robidoux*, 987 F.2d at 937 ("A court is not bound by the class definition proposed in the complaint."). As a result, the proposed class definition covers persons who own vehicles with continuity prong windshield washer fluid sensors; who purchased and used Rain-X windshield washer fluid in such vehicles; and whose continuity prong windshield washer sensors in such vehicles were then repaired or replaced any time after December 30, 2012 and before January 1, 2017. (*See* Reply at 6-7.) This definition satisfies the "modest threshold requirement" of ascertainability because it provides "a clear sense of who is suing about what." *See In re Petrobras Sec.*, 862 F.3d at 269.

18

### D. Rule 23(b)(3)

When Rule 23(a) is satisfied, a class may be certified under Rule 23(b)(3) if (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" (the predominance requirement); and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (the superiority requirement). *In re Petrobras Sec.*, 862 F.3d at 260.

#### 1. Predominance

##### a. *Legal Standard*

"A district court may only certify a class under Federal Rule of Civil Procedure 23(b)(3) if questions of law or fact common to class members predominate over any questions affecting only individual members." *Id.* at 270. "This predominance requirement is satisfied if: (1) resolution of any material legal or factual questions . . . can be achieved through generalized proof, and (2) these common issues are more substantial than the issues subject only to individualized proof." *Id.* This "requirement is more demanding than Rule 23(a)." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015).

"An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof.'" *In re Petrobras Sec.*, 862 F.3d at 270. (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc.*, 577 U.S. at 453. "When one or more of the central issues in the action

are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* at 453-54 (citing 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123-24 (3d ed. 2005)).

### b.  *Application*

Plaintiff satisfies the predominance requirement. Despite Defendants' speculative hypotheticals to the contrary, this is, at bottom, a straightforward action, involving a discrete injury suffered by all class members upon use of an allegedly defective product. Plaintiff's alleged causes of action in negligence, strict products liability, and N.Y. G.B.L. §§ 349, 350 all depend on common issues that can be resolved through generalized proof, particularly because these issues can be resolved through objective tests considering the conduct of a reasonable consumer, the reasonableness of Defendants' actions, the materiality of information Defendants possessed and when Defendants possessed it, and whether the Rain-X produced during the class period was incompatible with continuity prong windshield wiper fluid sensors. *See, e.g., Kommer v. Ford Motor Co.*, No. 17-cv-296 (LEK) (DJS), 2017 WL 3251598, at *4 (N.D.N.Y. July 28, 2017) ("To state an omission claim [under N.Y. G.B.L. §§ 349, 350], a plaintiff must plausibly allege that a (1) business alone possessed material information and (2) failed to provide that information to consumers. . . . An omission is material if the business's failure to disclose is likely to mislead a reasonable consumer.") (citing *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 745); *Kurtz*, 321 F.R.D. at 530 ("[W]here the consumer protection statute at issue supplies an objective test, such claims are considered ideal for class certification . . . .").

Defendants challenge predominance on several grounds. To start, Defendants again argue that proof of individual reliance predominates over the N.Y. G.B.L. § 350 claim. (Opp. at 29.) As discussed, however, "neither Section 349 nor 350 require proof of reliance." *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409.

Next, Defendants argue that individual issues predominate over the Rain-X product a consumer may have used. Here, Defendants emphasize that Rain-X used two different formulas during the class period, arguing that "the difference is critical in terms of identifying whether an individual could potentially be a class member." (Opp. at 24.) As a result, Defendants contend, "a detailed factual inquiry into the formula for each Rain-X product (and/or competing product used) and their respective differences will become necessary in order to establish Defendants' liability in each instance." (*Id.*) Given the record in this case, it is unclear how this argument supports Defendants' position. This change in the Rain-X formula is the crux of Plaintiff's claims. (*See* Cert. Mot. ¶¶ 3-6.) Defendants concede that warranty claims and customer complaints surged for continuity prong windshield wiper fluid sensors after Defendants revised the Rain-X formula, and all-but stopped when they reverted back to the original formula. (*See* Opp. at 5-7.) In addition, the expert reports, from both Plaintiff and Defendants, clarify the issue, because the reports substantially agree that the revised Rain-X formula caused the issue for continuity prong windshield wiper fluid sensors. (*See* Rep. of Expert Wit. Meyer Rosen ("Pl.'s Expert Rep.") (Dkt. 106-2) at 9; Decl. of Mark Weyman, Rep. of Expert Wits. Anthony Revis and Raymond Tabler ("Defs.' Expert Rep.") (Dkt. 107-1) at ECF pp. 94-95; Supp. Rep. of Meyer Rosen (Dkt 109-1).) Therefore, neither Defendants nor the court can identify any individualized questions from these facts.

Defendants also argue that individual issues predominate over the length of and volume of use. (Opp. at 25.) But Defendants

offer no persuasive evidence to suggest that factors outside of the changed formula cause the sensor issues. Indeed, the record, including the expert reports from both parties, indicates that the changed formula was the primary and common cause of the sensor defect. (*See* Pl.'s Expert Rep. (Dkt. 106-2) at 9; Defs.' Expert Rep. (Dkt. 107-1) at ECF pp. 94-95.) The common question is whether the changed Rain-X formula caused the windshield wiper fluid sensors to malfunction. Thus, it is unclear why either length or volume would be required for the class definition, because neither length nor volume changes that inquiry in any fundamental way.

Defendants also contend that Plaintiff's strict liability and negligence claims require proof that the alleged defect caused injury to the plaintiff, and the N.Y. G.B.L. claims require individualized proof of actual injury. (Opp. at 26-27.) Here, Defendants' counterarguments suggest that Plaintiff define the class as an unfavored "fail-safe" class, requiring the court to decide the merits of prospective individual class members' claims to determine class membership. *See generally* 1 Newberg on Class Actions § 3:6 (5th ed. 2021). In any case, Plaintiff sufficiently alleges actual injury, and the class definition requires use of Rain-X and a concrete and particularized injury—that is, each class member must have repaired or replaced a continuity prong sensor. (*See* Cert. Mot. at 1.)

Finally, Defendants argue that Plaintiff fails to propose a common damages methodology, leaving the class overwhelmed by questions of individual damage calculations. This argument is unpersuasive. Defendants misstate the central holding of *Comcast v. Behrend* in suggesting that Plaintiff is *required* to put forth a damages methodology. "*Comcast* did not rewrite the standards governing individualized damage considerations: it is still clear that individualized monetary claims belong in Rule 23(b)(3)." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir.

2015); *see Mendez v. MCSS Rest. Corp.*, No. 16-cv-2746 (NGG) (RLM), 2019 WL 2504613, at *12 (E.D.N.Y. June 17, 2019) ("[I]t is well-settled that individualized damages calculations do not defeat predominance.") (collecting cases). "All that is required at class certification is that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Sykes*, 780 F.3d at 88.[5]

Plaintiff represents a class with a discrete problem, raising common questions capable of resolution by generalized evidence on a class-wide basis. The central issues are common to the class, and the court discerns no individualized issues that would overwhelm the litigation. Accordingly, predominance is satisfied.

    2.  Superiority

    *a.  Legal Standard*

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Mendez*, 2019 WL 2504613, at *11 ("For Rule 23(b)(3) certification to be appropriate, a class action must be the most fair and efficient method of resolving disputes."). Courts must consider four non-exclusive factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

---

[5] Should Defendants be found liable on some or all of these claims, individual issues may exist as to damages. But these individualized damages calculations are readily accessible and do not threaten to overwhelm the litigation. If it later becomes clear that this case is not manageable as a class action, the court can decertify the class. *See* Perez v. Isabella Geriatric Ctr., Inc., No. 13-CV-7453 (RA), 2016 WL 5719802, at *4 (S.D.N.Y. Sept. 30, 2016) ("The Court has the 'ability to manage the litigation as it develops,' and if Plaintiffs ultimately fail to proffer a workable trial plan, then the Court can decertify the class.") (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). At this stage, though, Defendants have yet to proffer anything that would lead to this result.

(B) the extent and nature of any litigation concerning the
controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the lit-
igation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "[T]hese factors . . . implicate the supe-
riority inquiry." *Sykes*, 780 F.3d at 82.

> b.   Application

All four factors weigh in favor of superiority. This case may in-
volve thousands of claims that resulted in damages of between
$100 to $200 per class member. Thus, proceeding individually
would be prohibitive to the members. *See de Lacour*, 338 F.R.D.
at 345-46 (quoting *Seijas v. Republic of Argentina*, 606 F.3d 53,
58 (2d Cir. 2010)) ("Because 'proceeding individually would be
prohibitive for class members with small claims,' a class action is
'frequently superior to individual actions.'"). In addition, the par-
ties have directed the court to no other litigation concerning this
controversy; common questions of fact predominate over this
case; and the class is manageable.

Defendants' argument that class membership cannot be readily
established is unpersuasive. (Opp. at 31-32.) As shown, car man-
ufacturers maintain records of a significant number of warranty
claims, and Defendants possess claimant information from con-
sumer complaints. An individual car-owner may even contact the
mechanic's shop that repaired her continuity prong windshield
wiper fluid sensor. Here, individual claimants in this case may
also self-identify, which courts accept as an acceptable method
of identification. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407-
08 (allowing self-identification for purchasers of grass seed);
*Ebin*, 297 F.R.D. at 567 (allowing self-identification for purchas-
ers of olive oil).

"The Second Circuit has instructed that 'failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule.'" *Ebin*, 297 F.R.D. at 567 (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001)). This class is manageable, and Defendants have provided no reasons that a class action would not be a superior means of fairly and effectively adjudicating this matter. Rather, Defendants' arguments "would render class actions against producers almost impossible to bring." *Id.* For the reasons stated above, superiority is satisfied.

### E. Class Counsel

#### 1. Legal Standard

A court certifying a class must ensure that it will be adequately represented by class counsel. *See* Fed. R. Civ. P. 23(g). It must consider:

    i.    The work counsel has done in identifying or investigating potential claims in the action;

    ii.    Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

    iii.    Counsel's knowledge of the applicable law; and

    iv.    The resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). "The adequacy of counsel requirement is satisfied where the class attorneys are experienced in the field or have demonstrated professional competence in other ways, such as by the quality of

the briefs and the arguments during the early stages of the case."
*Lewis*, 2012 WL 170049, at *15.

          2.   Application

Plaintiff's counsel meet all the relevant criteria. Attorneys from
Edelman, Combs, Latturner & Goodwin, LLC and Kleinman, LLC
have litigated this case since it began in 2015; they have handled
all relevant discovery and depositions; and they succeeded in
winning a motion to compel disclosure of the Rain-X formula
from Defendants. Moreover, these firms collectively have signifi-
cant experience handling class actions and other complex
litigation. (*See* Decl. of Tiffany Hardy). Defendants make no ar-
guments against the adequacy of class counsel. For these reasons,
Class Counsel satisfy the adequacy requirement under Rule
23(g).

### III. CONCLUSION

Plaintiff's motion for class certification is GRANTED. Plaintiff John Duffy is appointed as class representative. Edelman, Combs, Latturner & Goodwin, LLC and Kleinman, LLC are appointed as class counsel.

The parties are DIRECTED to confer and propose a redacted version of this Memorandum & Order for the public docket by October 11, 2021, in accordance with the relevant protective orders in place.

The parties are DIRECTED to confer with Magistrate Judge Steven I. Locke as to the appropriate next steps in this litigation.

SO ORDERED.


Dated:      Brooklyn, New York
            September 30, 2021

                                        /s/ Nicholas G. Garaufis
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge