UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---

JOHN DUFFY III, individually and on behalf of all others similarly situated,

                Plaintiffs,

-against-

ILLINOIS TOOL WORKS, INC., and South/WIN LTD.,

                Defendants.

**MEMORANDUM & ORDER**
**15-CV-7407 (NGG) (SIL)**

NICHOLAS G. GARAUFIS, United States District Judge.

Now before the court is Plaintiff's motion for settlement in this consumer product liability class action. (Mot. for Settlement (Dkt. 160); *see also* Class Settlement Agreement and Release ("Settlement Agreement") (Dkt. 160-2).) The court preliminarily approved the motion for settlement on October 20, 2023, and held a fairness hearing on March 15, 2024. (*See* Preliminary Approval Order (Dkt. 163); Min. Entry dated March 15, 2024; Fairness Hearing Tr.) For the reasons set forth below, the court finds the parties' Settlement Agreement to be fair, adequate, and reasonable, and GRANTS Plaintiff's motion for final settlement approval.

### I. BACKGROUND AND PROCEDURAL HISTORY

John Duffy III ("Plaintiff" or "Duffy") commenced this class action against Defendants, alleging that Defendants manufactured and sold Rain-X windshield washer fluid, which caused damage to his vehicle's "continuity prong washer sensor," and certain other motor vehicles equipped with this sensor, requiring repairs

1

between $100 and $200 in cost. (*See generally* Am. Compl. (Dkt. 21) ¶¶ 1-2, 6, 16, 22, 38-47.)[1]

On December 30, 2015, Plaintiff filed his initial complaint, asserting claims for strict product liability, negligence, and violations of New York General Business Law §§ 349 and 350 (*see* Initial Compl. (Dkt. 1)), as well as his first motion to certify the class. (Mot. to Certify Class (Dkt. 5).) Plaintiff then filed an amended complaint on February 12, 2016, curing certain defects, but otherwise bringing the same claims. (Am. Compl.) On March 2, 2016, Defendants moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which this court granted in part and denied in part on November 1, 2016. (M&O dated Nov. 1, 2016 (Dkt. 35).)

Plaintiff then filed a renewed motion for class certification on August 31, 2020 (Renewed Mot. to Certify Class (Dkt. 105)), which was granted on September 30, 2021. (M&O dated Sept. 30, 2021 ("Class Cert. M&O") (Dkt. 115).) This court certified a class of:

> (a) all persons (b) with vehicles (c) that are equipped with continuity prong windshield washer fluid sensors (d) who purchased and used Rain-X windshield washer fluid in such vehicles (e) whose continuity prong windshield washer sensor in such vehicles was then repaired or replaced anytime after December 30, 2012 and before January 1, 2017 (f) if either the vehicle was registered in New York, the repairs were done in New York, or the Rain-X was purchased in New York. (*Id.* at 3.) (hereinafter referred to as the "Class")

---

[1] The Court recites the facts as alleged in the amended complaint. (*See generally* Am. Compl.) *See also Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *1 (E.D.N.Y. Jan. 6, 2021). Defendants deny these allegations and dispute liability. (*See* Settlement Agreement at 2.)

2

In granting class certification, the court also appointed John Duffy as class representative and Edelman, Combs, Latturner & Goodwin, LLC and Kleinman, LLC as class counsel. (Class Cert. M&O at 27.)

Following class certification, the parties participated in several mediation sessions before Magistrate Judge Steven Locke. (*See* Mem. in Support of Final Approval of Class Settlement ("Mot. for Final Approval") (Dkt. 168)[2] at 3.) On October 6, 2023, following the mediation sessions, the parties moved for approval of a class-wide settlement agreement, and this court granted preliminarily approval two weeks later. (*See* Mot. for Settlement; Settlement Agreement; Preliminary Approval Order.) In the Preliminary Approval Order, the court found that the Agreement satisfied the elements of Federal Rule of Civil Procedure 23, including that: the proposed settlement was negotiated in good faith and at arm's length; the class was certified pursuant to Rule 23(a) and 23(b)(3); the proposed form of notice was reasonable; and the terms were "fair, reasonable and adequate, and in the best interests of the Settlement Class in light of the factual, legal, practical and procedural considerations raised by this case." (Preliminary Approval Order at 1-2.)

The court also set 90-day deadlines to submit objections and opt out of the class, which expired on January 19, 2024. (*Id.* at 4-5.) On March 5, 2024, Plaintiff submitted a memorandum in support of final approval of the Settlement Agreement, which, *inter alia*: reports that the Class consists of approximately 5,613 class members (Mot. for Final Approval at 1); discusses the notice provided to the Class (*id.* at 1-2); details the litigation preceding the settlement (*id.* at 3-4); and describes the administration of the class

---

[2] Plaintiff subsequently filed a corrected Memorandum in Support of Final Approval of Class Settlement that corrected typography and certain citations. (*See* Dkt. 171.) For purposes of this Memorandum & Order, all references are to Plaintiff's initial filing (Dkt. 168).

settlement, noting that 92 class members submitted valid claims under the Settlement Agreement, and that no class members objected to the settlement or opted out of the settlement (*id.* at 4-5.) The court then held a Fairness Hearing on March 15, 2024, at which no class members appeared to comment on the settlement, and at which the parties discussed the Settlement Agreement's proposed terms and notice procedures. (*See* Min. Entry dated March 15, 2024; Fairness Hearing Tr.)

## II. SETTLEMENT AGREEMENT

### A. Settlement Agreement

Under the terms of the Settlement Agreement, Defendants agreed to pay up to $250,000 to be distributed to Class Members who submitted valid claims. (Settlement Agreement ¶¶ 11-13.) Class Members were able to claim between $20 and $200, and if the total amount of the claims exceeded $250,000, the claims were to be reduced pro rata. (*Id.*) If a Class Member submitted a valid claim but did not prove unreimbursed actual damages, their claim would be $20. (*Id.* ¶ 11.) If the Class Member submitted a valid claim and proved unreimbursed actual damages, their claim was allowed for the amount of actual damages proven up to a maximum of $200. (*Id.*) Class members had until January 19, 2024 to submit valid claims. (*Id.* ¶ 12; Mot. for Final Approval at 2.)

Defendants also agreed to pay: Class notice and administrative expenses, which amounted to an estimated $27,245 (Settlement Agreement ¶ 17; *see also* Mot. for Final Approval at 5); up to $10,000 to the named plaintiff as an incentive award, subject to

the court's approval (Settlement Agreement ¶ 16)[3]; and "reasonable attorneys' fees, costs and expenses" which would not reduce the amount available to class members. (*Id.* ¶¶ 18-19.)[4]

Under the Settlement Agreement, Plaintiff's claims that relate to or arose from "the purchase or use of any Rain-X branded product used on any vehicle's windshield provided such vehicle was equipped with continuity prong windshield washer fluid sensors or in any vehicle's windshield washer fluid reservoir" would be released. (*Id.* ¶¶ 22-23.) The claims of class members who did not opt out of the agreement would also be released. (*Id.*)

### B. Class Notice and Response from the Class

When granting preliminary approval, the court approved the proposed form of notice. (Preliminary Approval Order ¶ 7.) Plaintiff reports that following the court's Preliminary Approval, the "Settlement Administrator" mailed notice of the settlement to 5,613 class members on November 9, 2023. (Mot. for Final Approval at 1.) Plaintiff further reports that:

> Of the 5,613 Notices initially mailed ("Mail Notice"), 414 Mail Notices were returned as undeliverable. There were 70 returned Mail Notices that contained address forwarding information or a new address was otherwise obtained using skip-tracing. The 70 Mail Notices were remailed within four days of receipt. There were 344 Mail Notices where address

---

[3] This amount was to be treated separately from the total recoverable amount of $250,000 for other class members—*i.e.*, any award to the named plaintiff would not reduce the amount recoverable by other class members. (Mot. for Final Approval at 3-4.)

[4] If the parties could not agree on an amount for attorneys' fees and costs, Plaintiff was permitted to apply to the court for these amounts. (*Id.*) Because the parties could not agree on an attorneys' fees amount, Plaintiff submitted a request for attorneys' fees on November 10, 2023, and Defendants filed their response on March 8, 2024. (Mot. for Attorneys' Fees (Dkt. 164); Opp. to Mot. for Attorneys' Fees (Dkt. 169).)

forwarding information was not available or ascertainable. (Mot. for Final Approval at 1-2; *see also* Fairness Hearing Tr.)

In sum, "Notice of the settlement was successfully sent to 5,269 Class Members out of a total of 5,613 (or 93.87%.)" (Mot. for Final Approval at 2.) Notice was also successfully sent to 421 of 543 class members who provided a valid email. (*Id.*) And notice was posted twice, at least two weeks apart in the following newspapers: New York Daily News, Newsday, The Buffalo News, Albany Times-Union, Syracuse Post-Standard, Rochester Democrat and Chronicle and Binghamton Press and Sun. (*Id.*; Dorothy Sue Merryman Decl. (Dkt. 168-2) ¶ 12.) Lastly, a dedicated website was created for the settlement and notice was provided to the Attorney General or appropriate state officials in each state where a potential class member resided. (Mot. for Final Approval at 2.)

Plaintiff reports that the settlement received no opt outs and no objections and that no Attorney General or other appropriate state official objected to the settlement. (*Id.*) However, only 92 class members submitted a valid and timely claim by the January 19, 2024 deadline, which equates to a total payment of just $1,859.18 to class members. (Defs. Mem. in Opp. to Attorneys' Fees (Dkt. 169) at 1; *see also* Fairness Hearing Tr.)

### III. DISCUSSION

#### A. Class Certification

The Settlement Class is now finally certified for purposes of settlement pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and includes:

> (a) persons (b) with vehicles (c) that are equipped with continuity prong windshield washer fluid sensors (d) who purchased and used Rain-X windshield washer fluid in such

vehicles (e) whose continuity prong windshield washer sensors in such vehicles was then repaired or replaced any time after December 30, 2012 and before January 1, 2017 (f) if either the vehicle was registered in New York (state), the repairs were done in New York (state), or the Rain-X was purchased in New York (state).

The Court previously certified this Class on September 30, 2021. (Class Cert. M&O.)

Additionally, John Duffy III is designated as Class Plaintiff, and Daniel A. Edelman, Heather Kolbus and Stephen Pigozzi of Edelman, Combs, Latturner and Goodwin, LLC and Abraham Kleinman of Kleinman LLC are appointed as Class Counsel, for the Settlement Class. (*Id.*) For the reasons discussed in this court's order certifying the class, the Settlement Class, Class Plaintiff and Class Counsel meet the Rule 23 requirements. (*See generally id.*)

### B. Class Notice

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113-14 (2d Cir. 2005).[5] Notice is reasonable if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* at 114. "Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice [if] class counsel acted reasonably in choosing the means likely to inform potential class members." *Doe #1 by Parent #1 v. New York City Dep't of Educ.*,

---

[5] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

7

No. 16-CV-1684 (NGG) (RLM), 2018 WL 3637962, at *9 (E.D.N.Y. July 31, 2018).

The Class notice, described *supra*, provided due and sufficient notice to all persons entitled to notice of the settlement of the action and therefore complies with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), due process, and the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

### C. Settlement Agreement

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of . . . a class proposed to be certified for purposes of settlement [] may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The Second Circuit has expressed a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc.*, 396 F.3d at 116-17 (noting that "[t]he compromise of complex litigation is encouraged by the courts and favored by public policy").

To approve a class settlement under Rule 23(e), the district court must determine that it is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In conducting this inquiry, courts must consider both the substantive and procedural fairness of a proposed settlement to determine "whether the terms of the settlement and the negotiation process leading up to it are fair." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms.").

The court finds that the Settlement Agreement meets the procedural fairness requirement. As this court found when granting preliminary approval of the Settlement Agreement, the parties

8

engaged in arm's length and good faith discussions, as supported by the multiple mediation sessions the parties held with Magistrate Judge Locke prior to finalizing the Settlement Agreement.

The court further finds that the Settlement Agreement is fair, reasonable, and adequate when reviewing the Settlement Agreement under the *Grinnell* factors. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000).[6] Under the Settlement Agreement, class members are to receive between $20 and $200, subject to pro rata reduction. (Settlement Agreement ¶ 11.) Although the total amount to be paid to class members is small, this is not surprising given the case's context. As the parties discussed at the Fairness Hearing, the class was composed of individuals who owned luxury vehicles prior to 2017 who may not have been inclined to pursue awards for damage caused approximately ten years ago that totaled less than $200. (*See* Fairness Hearing Tr.) This is especially the case where the total damages incurred by class members was uncertain due to many class members receiving repairs covered by the car owners' warranty. (*Id.*) Thus, even though the amount claimed is less than $2,000, compared to the total potential recovery for class members of $250,000 under the Settlement

---

[6] The nine *Grinnell* factors include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id.* "A court need not find that every factor militates in favor of a finding of fairness; rather, a court considers the totality of these factors in light of the particular circumstances." *Doe #1 by Parent #1*, 2018 WL 3637962, at *11.

Agreement, it is reasonable that these vehicle owners did not submit valid claims despite receiving reasonable notice of the settlement. This is simply a case where an exceedingly small settlement on behalf of class members may still be adequate. *See Chavarria v. New York Airport Serv., LLC*, 875 F. Supp. 2d 164, 175 (E.D.N.Y. 2012) ("As the Second Circuit has stated, 'the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.' *Grinnell*, 495 F.2d at 455. 'In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.' *Id.* at 455 n. 2.").

Also supporting the parties' settlement is that the parties have advanced relatively far in the pretrial process, with the parties completing fact and expert discovery, and Plaintiff's counsel successfully moving for class certification. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 198 (S.D.N.Y. 2012) (finding that less scrutiny is warranted where, as here, "Settlement was reached after the classes were certified."). And there were significant risks in continuing this litigation, such as the potential challenges in proving damages given the length of time that elapsed since the injuries and the possibility that members of the class may no longer possess the vehicles in which continuity prong windshield washer sensors were repaired or replaced. (*See* Mot. for Final Approval at 14.) The lack of class members' objections further supports a finding that the agreement is fair, reasonable, and adequate.

Lastly, approval of the Settlement Agreement is supported by class members' opportunity to opt out, which protects class members that may have wished to individually litigate these claims from any undue prejudice.

In sum, the court finds the Settlement Agreement to be fair, reasonable, and adequate in light of the factual, legal, practical, and procedural considerations raised by this case. The court therefore GRANTS Plaintiff's motion for final settlement approval.

### D. Incentive Award

Counsel requests an incentive award of $10,000 for Plaintiff, which would not impact the amount recovered by class members. An incentive award may be given to compensate named plaintiffs for efforts expended "for the benefit of the lawsuit." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-CV-5450, 2018 WL 3863445, at *2 (S.D.N.Y. Aug. 14, 2018).

Class counsel states that Plaintiff "championed this class action for almost a decade. He participated in discovery and settlement discussions and otherwise assisted with early investigation of his claims. He otherwise reviewed various pleadings, orders and correspondence concerning the litigation." (Mot. for Final Approval at 15.) However, class counsel provides no evidence in support of this, in the form of an affidavit or otherwise. The court thus RESERVES JUDGMENT on approving the requested incentive award and DIRECTS Plaintiff's counsel to file evidence attesting to Plaintiff's participation in the case.

### E. Attorneys' Fees

The settlement agreement has a provision stating that reasonable attorneys' fees will be paid by the Defendants. (Settlement Agreement ¶ 18.) Any award of attorneys' fees would not subtract from the potential amount paid to class members and was to be considered separately from the court's determination of whether to grant final approval of the Settlement Agreement. (*Id.* ¶¶ 18-19.) Plaintiff moved for approval of attorneys' fees on November 11, 2023. (Mot. for Attorneys' Fees (Dkt. 164).) The court referred this motion to Magistrate Judge Locke on March 15, 2024 for a

Report and Recommendation. (ECF Order dated March 15, 2024.)

## IV. CONCLUSION

In sum, having reviewed the Settlement Agreement, Plaintiff's motion for final approval, and the statements made at the Fairness Hearing, the court GRANTS the parties' joint motion for final approval of the Settlement Agreement. In accordance with the terms of the Settlement Agreement, Defendants shall pay $1,859.18 to be distributed to Class Members who submitted valid claims.

The court RESERVES JUDGMENT on Plaintiff's incentive award petition. Plaintiff's counsel is DIRECTED to file evidence, in the form of an affidavit or otherwise, reviewing Plaintiff's participation in the litigation.

SO ORDERED.

Dated:   Brooklyn, New York
         March 19, 2024

s/Nicholas G. Garaufis<br>
NICHOLAS G. GARAUFIS<br>
United States District Judge