UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
JOHN DUFFY III, *on behalf of Plaintiff and the class members described herein,*

                Plaintiff,

   -against-

ILLINOIS TOOL WORKS, INC. and SOUTH/WIN LTD.,

                Defendants.
---------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
15-cv-7407 (NGG)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this diversity-products liability class action, on referral from the Honorable Nicholas G. Garaufis for Report and Recommendation, is Plaintiff John Duffy III's ("Plaintiff" or "Duffy") Motion for Attorneys' Fees and Costs. *See* Class Counsel's Fee and Expense Petition and Supporting Memorandum, ("Plaintiff's Motion" or "Pl. Mot."), Docket Entry ("DE") [164].  Defendants Illinois Tool Works, Inc. ("ITW") and South/Win Ltd. ("South," and collectively "Defendants") oppose.  *See* Memorandum of Law in Opposition to Class Counsel's Fee and Expense Petition ("Opposition" or "Opp."), DE [169].  By way of Complaint filed on December 30, 2015, *see* Complaint, DE [1], later modified by an Amended Complaint dated February 12, 2016, *see* Amended Complaint, DE [21], Plaintiff commenced this litigation against Defendants asserting, *inter alia,* breach of warranty, products liability and negligence claims arising from the sale of windshield washer fluid, which created certain problems for the cars that the fluid was used with.

1

Following eight years of litigation, five motions to compel, six written opinions, 23 court conferences, and countless hours of the Court's and the litigants' time, Duffy negotiated a class settlement agreement for which all class plaintiffs were paid a total of $1,859.18 – less than the threshold amount for small claims court.[1]  Pursuant to the agreement, Plaintiff's counsel now seeks an award of $350,000.00 in attorneys' fees and $41,117.61 in costs, for a total of $391,117.61.  Pl. Mot., 1.  Given the limited total recovery on behalf of the class, the Court respectfully recommends that Plaintiff's Motion be granted in part and denied in part and that Plaintiff's counsel be awarded $19,316.35 in attorneys' fees and $41,117.61 in costs, for a total of $60,433.96.

I.   **BACKGROUND**

The following facts are taken from the parties' memoranda of law, declarations and exhibits submitted in connection with Plaintiff's Motion.  The Court limits its recitation to the facts and procedural history to that necessary to resolve the present motion.

Duffy alleged that Defendants manufactured Rain-X windshield washer fluid, which damaged motor vehicles equipped with "continuity prong washer sensor[s]," in certain Volkswagen, Audi, Mini Cooper, BMW, Mercedes, and Chrysler vehicles, among others, requiring repairs costing between $100 and $200.  Pl. Mot., 2; Opp., 1. Defendants allegedly represented on packaging and labels that Rain-X was suitable

---

[1] In New York Small Claims Court, claimants can seek up to $5,000 in City Courts and $3,000 in Town and Village Courts.  A GUIDE TO SMALL CLAIMS & COMMERCIAL SMALL CLAIMS IN THE NEW YORK STATE, CITY, TOWN AND VILLAGE COURT, New York State Unified Court System, 1 (updated February 2024).

2

for use in motor vehicles without qualification or warning. Pl. Mot., 2. Plaintiff purchased Rain-X and used it in his Audi vehicle. Pl. Mot., 2; Opp., 1. The Rain-X product allegedly coated the low fluid warning sensors, causing the low fluid warning light to illuminate even though the windshield washer fluid reservoir was filled. Pl. Mot., 2; Opp., 1. This problem required time and money to fix. *See* Pl. Mot., 2.

Based on the foregoing, Plaintiff commenced this action against Defendants on December 30, 2015, asserting claims for breach of express warranty, products liability, negligence, and deceptive business practices and false advertising pursuant to New York General Business Law ("NY GBL") §§ 349, 350. *See* Complaint, DE [1]. Duffy filed an Amended Complaint, alleging the same claims, on February 12, 2016. *See* Amended Complaint, DE [21]. On November 1, 2016, Judge Bianco, then assigned to this action while still serving as a district judge, dismissed Plaintiff's breach of express warranty claim and his request for injunctive relief. *See* DE [35]. Discovery proceeded as to Duffy's remaining claims. *See* DEs [43] – [44]. Judge Garaufis was assigned to this action on May 31, 2019.

During discovery, Plaintiff moved to compel Defendants to produce the Rain-X formula and consumer contact information, which the Court granted in part and denied in part. *See* DEs [56], [68]. Duffy also filed three motions to compel third parties to comply with subpoenas, which the Court granted in part and denied in part. *See* DEs [78], [88], [132], [137], [144]; Electronic Order dated Aug. 16, 2022.

On September 30, 2021, Judge Garaufis granted Plaintiff's motion for class certification, appointed Duffy as class representative, and named Edelman, Combs,

3

Latturner & Goodwin LLC ("Edelman") and Kleinman, LLC ("Kleinman," collectively "Class Counsel") as class counsel. *See* DE [115]. Following further discovery and several conferences with the Court, the parties reached a settlement agreement (the "Settlement Agreement") and filed a motion for preliminary approval on October 6, 2023. *See* DE [160]. On October 20, 2023, Judge Garaufis granted the motion for preliminary approval of the Settlement Agreement, certified a class for settlement purposes, appointed Duffy as class representative and Edelman and Kleinman as Class Counsel, and approved distribution of a class notice. *See* DE [163].

Pursuant to the Settlement Agreement, Defendants agreed to pay damages up to $250,000 in total, to be distributed to class members that submitted valid claims. Settlement Agreement, DE [160-2], ¶ 9. If a class member submitted a valid claim, but did not provide evidence of unreimbursed actual damages, that person would receive $20. *Id.* ¶ 11. If a class member submitted a valid claim and provided proof of actual damages, that individual would receive up to $200. *Id.* Both types of valid claims may have been subject to a *pro rata* reduction in the event of the total claims exceeding the settlement fund. *Id.* Claim forms must have been returned within 90 days of the Court's preliminary approval of the Settlement Agreement to be valid. *See* Order granting Motion for Settlement, DE [163], ¶ 8(a). Further, Defendants were required to pay Plaintiff up to $10,000 for his individual damages and as an incentive award, subject to Court approval. Settlement Agreement, ¶ 16. Defendants also agreed to pay for the distribution of the class notice and other administrative expenses, as well as "the reasonable attorneys' fees, costs and expenses, including

4

expert expenses, as awarded by the Court to Plaintiff's counsel." *Id.* ¶¶ 17-18. "Expenses" includes "expert[s], filing fees, transcripts, subpoenas, service of process, and similar typical expenses." *Id.* ¶ 18. The parties further agreed that the United States District Court for the Eastern District of New York shall retain exclusive jurisdiction over the implementation and enforcement of the Settlement Agreement and that it shall be governed by New York law. *Id.* ¶¶ 40-41.

Following the Court's preliminary approval of the Settlement Agreement, notice of the settlement was mailed to 5,613 class members, as well as posted in several newspapers and online. Memorandum and Order on Plaintiff's Motion for Settlement Approval ("Final Approval Order"), DE [173], 6. The deadline to submit claims was January 19, 2024, and while no class members opted out or objected to the Settlement Agreement, only 92 valid claims were ultimately submitted. *See* Opp., 1; Final Approval Order, 6. On March 19, 2024, following a final fairness hearing, Judge Garaufis granted Plaintiff's motion for final settlement approval and ordered Defendants to pay a total of $1,859.18, to be disbursed amongst the 92 class members that submitted valid claims. *See* Final Approval Order, 12. Judge Garaufis reserved judgment on the issue of Plaintiff's incentive award. *Id.*

Plaintiff's Motion was filed on November 13, 2023, which Judge Garaufis referred to this Court for a Report and Recommendation on March 15, 2024. *See* Pl. Mot.; Order Referring Motion. Pursuant to Judge Garaufis's order, the parties filed supplemental briefing on April 19, 2024. *See* Supplemental Memorandum in Support of Plaintiff's Motion ("Plaintiff's Supplemental Memorandum" or "Pl. Supp."), DE

5

[175]; Defendant's Supplemental Memorandum of Law in Opposition to Plaintiff's Motion ("Defendant's Supplemental Opposition" or "Def. Supp."), DE [176].

Plaintiff asserts that Edelman spent over 875.20 hours in total litigating this action – which was billed at hourly rates ranging from $325 to $700 for partners, $230 for associates and $125 for paralegals – amounting to a total of $352,742.00 in attorneys' fees. *See* Pl. Mot., Ex. A, Declaration of Daniel A. Edelman ("Edelman Decl."), App. H, 147. The fees sought by Edelman are summarized below:

| Attorney Name and Title | Hourly Rate | Hours Worked | Fees Charged |
| --- | --- | --- | --- |
| Cathleen M. Combs (Partner) | $700.00 | 30 | $21,000.00 |
| Daniel A. Edelman (Partner) | $700.00 | 154.7 | $108,290.00 |
| James O. Latturner (Partner) | $700.00 | 3 | $2,100.00 |
| Tara L. Goodwin (Partner) | $600.00 | 7 | $4,200.00 |
| Francis R. Greene (Partner) | $500.00 | 0.4 | $200.00 |
| Heather Kolbus (Partner) | $500.00 | 158.2 | $79,100.00 |
| Dulijaza "Julie" Clark (Partner) | $500.00 | 0.3 | $150.00 |
| Cassandra Miller (Partner) | $450.00 | 0.6 | $270.00 |
| Tiffany Hardy (Partner) | $450.00 | 131 | $58,950.00 |
| Tiffany Hardy (Partner) | $325.00[2] | 128.5 | $41,762.00 |
| Stephen Pigozzi (Associate) | $230.00 | 38.2 | $8,786.00 |

---

[2] While Plaintiff's Motion does not explain why Ms. Hardy's work was billed at two different hourly rates, Edelman asserts that at the firm attorneys' hourly rates are adjusted "to account for inflation and increasing experience." Edelman Decl., ¶ 34. Accordingly, the Court will assume that Ms. Hardy's hourly rate was adjusted according to Edelman's stated policy.

6

| Emiliya G. Farbstein (Associate) | $230.00 | 0.2 | $46.00 |
|---|---|---|---|
| All Paralegals | $125.00 | 223.1 | $27,887.50 |
| **Total** | | 875.2 | $352,742.00 |

*See id.* 146-47. Abraham Kleinman, a partner and the only attorney at Kleinman, spent a total of 174.80 hours at an hourly rate of $400, charging a total of $56,685.00.[3] *See* Pl. Mot, Ex. B, Declaration of Abraham Kleinman ("Kleinman Decl."). Class Counsel therefore accumulated $409,427.00 in fees in total. In seeking $350,000 in attorneys' fees by way of the present motion, Class Counsel purports to request approximately 85% of the fees actually incurred. *See* Pl. Mot., 4. Edelman and Kleinman expended $44,545.01 and $567.68 in costs respectively, but Class Counsel seeks reimbursement for only $41,117.61 in costs. Edelman Decl., App. H, 147; Kleinman Decl., Ex. 1, 163; *see* Pl. Mot., 1.

## II.   DISCUSSION

Class Counsel seeks an award of $350,000 in attorneys' fees and $41,117.61 in costs, for a total of $391,117.61. Pl. Mot., 1. As noted above, Plaintiff seeks reimbursement for approximately 85% of the fees actually incurred. *Id.* 4. Defendants argue that Duffy's requested award is unreasonable given, *inter alia*: (1) Class Counsel's limited success on behalf of the class, (2) Edelman's excessive hourly rates compared to those customary in the Eastern District, (3) Edelman's overstaffing

---

[3] The Court notes that multiplying 174.80 hours by an hourly rate of $400 yields a total of $69,920 in attorneys' fees incurred by Kleinman. Duffy asserts, however, that Kleinman did not charge for 31.5 of the hours spent on this litigation, which accounts for the $12,600 deficit in Plaintiff's calculation of Kleinman's total fees. *See* Pl. Supp., 5.

7

and percentage of work performed by partners rather than associates or paralegals, and (4) Class Counsel's vague and/or block billed time entries. *See generally* Opp. Given the limited total recovery on behalf of the class, the Court respectfully recommends that Plaintiff's Motion be granted in part and denied in part and that Class Counsel be awarded $19,316.35 in attorneys' fees and $41,117.61 in costs, for a total of $60,433.96.

### A. Availability of Attorneys' Fees Under New York Law

In a diversity action, such as the instant case, state law governs the issue of the availability of attorneys' fees. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) (noting that "[s]tate law creates the substantive right to attorney's fees"). Further, the parties agreed that the Settlement Agreement shall be governed by New York law. *See* Settlement Agreement, ¶ 41.

"It is well settled in New York that a prevailing party may not recover attorneys' fees from the losing party except where authorized by statute, agreement or court rule." *RMP Cap. Corp. v. Victory Jet, LLC*, 139 A.D.3d 836, 839, 32 N.Y.S.3d 231, 235 (2d Dep't 2016) (internal citations and quotation marks omitted). When construing a contractual fee-shifting provision – such as that included in the Settlement Agreement – courts will award the amount expended by the prevailing party "so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987) (applying New York law). Moreover,

8

as noted above, the Settlement Agreement permits Plaintiff to seek "*reasonable attorneys' fees, costs and expenses.*" Settlement Agreement, ¶ 18 (emphasis added).

Under New York law, a reasonable fee "is commonly understood to be a fee 'which represents the reasonable value of the services rendered.'" *RMP Cap. Corp.*, 139 A.D.3d at 839, 32 N.Y.S.3d at 235 (quoting *NYCTL 1998-1 Tr. v. Oneg Shabbos, Inc.*, 37 A.D.3d 789, 790, 830 N.Y.S.2d 763, 764 (2d Dep't 2007)). "[T]he determination must be made based upon a demonstration of the hours reasonably expended on the litigation and what is reasonable compensation for the attorney based upon the prevailing rate for similar work in the community." *RMP Cap. Corp.*, 139 A.D.3d at 839, 32 N.Y.S.3d at 236. When evaluating requests for attorney's fees, New York courts typically consider, "the time and skill required in litigating the case, the complexity of issues, the customary fee for the work, and the results achieved." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992), *certified question withdrawn*, 984 F.2d 69 (2d Cir. 1993) (citing New York cases). Further, the Supreme Court has noted that in the event a litigant is only partially successful on its claims, a court "may simply reduce the award to account for the limited success," without undertaking an hour-by-hour calculation. *Hensley v. Eckerhart*, 461 U.S. 424, 436–37, 103 S. Ct. 1933, 1941 (1983).

Moreover, "the court must possess sufficient information upon which to make an informed assessment of the reasonable value of the legal services rendered." *NYCTL*, 37 A.D.3d 789, 791, 830 N.Y.S.2d 763, 764 (2d Dep't 2007). To this end, the party seeking the award of fees must offer proof not only as to the customary fee

9

charged for similar services, but also of the experience, reputation, and education of the lawyers who provided the representation. *See Friedman v. Miale*, 69 A.D.3d 789, 791-92, 892 N.Y.S.2d 545, 547-58 (2d Dep't 2010). The party requesting attorneys' fees bears the burden to establish entitlement to such an award. *See Zero Carbon Holdings, LLC & Four Thirteen, LLC, v. Aspiration Partners, INC.,* No. 23-CV-5262, 2024 WL 3409278, at *3 (S.D.N.Y. July 15, 2024) (applying New York law).

### B. Application to Plaintiff's Fee Request

Plaintiff seeks an award of $350,000 in attorneys' fees, based on the work of 11 attorneys from Edelman and one from Kleinman, as well as several Edelman paralegals. *See generally* Pl. Mot. Class Counsel have provided contemporaneous time records to support their assertions as to the hours spent litigating this action. *See* Edelman Decl., App. H; Kleinman Decl., Ex. 1. While Defendants argue that Class Counsel's time entries are vague and difficult to understand, the Court concludes that the records provide sufficient detail for the Court to conduct its analysis. *See* Opp., 18-19.

Further, Duffy submits sufficient documentation regarding the experience, reputation and education of all but two of these attorneys: Cathleen M. Combs and James O. Latturner. Combs and Latturner are former partners at Edelman, retiring in 2021 and 2020 respectively, but no further information about their experience and qualifications is provided. Edelman Decl., ¶ 1. As a result, the Court recommends that Plaintiff be denied attorneys' fees for their work.

10

With respect to the remaining attorneys and paralegals, the Court must determine whether the requested award is reasonable. Based on the information provided regarding Class Counsel's experience, expertise and previous awards of attorneys' fees, the Court determines the hourly rates charged to be reasonable. *See* Edelman Decl. ¶¶ 2-9, 35-36 (detailing each attorneys' qualifications and experience in consumer-related litigation, as well as prior awards of attorneys' fees to the Edelman firm); Kleinman Decl. ¶¶ 2-7 (detailing Abraham Kleinman's experience and expertise in consumer-related litigation). Given the limited results achieved in this litigation, however, the Court concludes that a significant reduction in the fees sought is warranted.

Duffy originally sought $5,000,000 damages on behalf of the class. Amended Complaint, DE [21], ¶ 8. After spending over eight years litigating this action, Plaintiff negotiated a total potential settlement fund – on behalf of all potential class members – of just $250,000. *See* Settlement Agreement, ¶ 9. And although notice of the Settlement Agreement was sent to over 5,600 class members, only 92 valid claims were submitted, resulting in a total payout to the class of just $1,859.18. *See* Final Approval Order, 6. Given this limited recovery, the Court cannot justify awarding Class Counsel $350,000 in attorneys' fees, which is 188 times the amount actually paid to class members. *See Am. Dev. Grp., LLC v. Island Robots of Fla.,* No. 17CV3223NGGPK, 2019 WL 5790265, at *13 (E.D.N.Y. Oct. 4, 2019), *report and recommendation adopted,* No. 17CV3223NGGPK, 2019 WL 5788319 (E.D.N.Y. Nov. 6, 2019) (awarding one quarter of fees sought based on limited success of plaintiff on

11

only NY GBL claim); *Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*, 25 F. Supp. 2d 127, 134 (E.D.N.Y. 1998) (reducing fee by half due to plaintiff's limited success based on both the federal law lodestar method and New York law factors); *see Riordan,* 977 F.2d at 54 (affirming reduced award of attorneys' fees based on plaintiff's limited recovery); *Gordon v. Verizon Commc'ns, Inc.,* 148 A.D.3d 146, 166, 46 N.Y.S.3d 557 (1st Dep't 2017) (remanding fee application to the trial court for a determination of an award "in an amount commensurate with the degree of benefit obtained by the class as a result of the litigation").

While Duffy asserts that attorneys' fees awarded under the fee-shifting provisions of NY GBL § 349 need not be proportional to the amount recovered, this argument is of no moment. *See* Pl. Supp., 2 (citing *Tomassini v. FCA US LLC*, No. 21-2785-CV, 2023 WL 2194016, at *2 (2d Cir. Feb. 24, 2023)). For one, although Plaintiff brought claims pursuant to NY GBL §§ 349 and 350, Duffy now seeks attorneys' fees pursuant to the parties' Settlement Agreement, which provides for the payment of "*reasonable* attorneys' fees." Settlement Agreement, ¶ 18 (emphasis added). Moreover, "the touchstone for an award of attorneys' fees pursuant to a contract is reasonableness." *Carco Group, Inc. v. Maconachy*, 718 F.3d 72, 86 (2d Cir. 2013). It is therefore appropriate for the Court to consider whether the requested fee award is reasonable based on Plaintiff's limited recovery.

Duffy also argues that the Court should disregard the minimal recovery obtained given the public policy considerations associated with this action. *See* Pl. Supp., 10. Plaintiff contends that the present litigation exposed a problem with the

12

Rain-X formula that had the potential to harm consumers. *See id.* The minimal overall participation in the settlement, however, directly contradicts Duffy's assertion. Only 92 out of over 5,600 class members filed valid claims, and only one of those claimants submitted proof of actual damages resulting from their use of the product. *See* Opp., 22. It appears that the public was, at most, only nominally interested in the problem underlying Plaintiff's lawsuit.

Lastly, the Court notes that a reduction in the requested fee is appropriate given the improper staffing of this matter. In total, ten partners – and only two associates – contributed to this action, along with several Edelman paralegals. *See* Edelman Decl., App. H, 146-47; Kleinman Decl. Moreover, approximately 75% of all work was completed by partners.[4] Further, much of the work performed by partner-level attorneys could have been handled by associates, including drafting discovery requests and responses, reviewing document productions, and conducting legal research. *See e.g.*, Edelman Decl., App. H, 5 (entry from Hardy on Feb. 28, 2017, "draft interrogatories – research interrogatories"); *id.* 12 (entry from Hardy on Jun. 23, 2017, "review def's [*sic*] doc production . . ."); *id.* 15 (entry from Hardy on July 7, 2027, "Westlaw research re redacting class member info"). Kleinman often performed administrative tasks typically associated with paralegals. *See e.g.*, Kleinman Decl., Ex. 1, 13 ("File DAE granted PHV in case management system"; *id.* 27 ("Enter Discovery Conference Adjourn Request [49] in case management system"). Plaintiff argues that this staffing structure was appropriate in light of Kleinman's status as a

---

[4] Partner-work accounted for 788.5 out of 1,050 total hours billed in this litigation. *See* Edelman Decl., App. H, 146-47; Kleinman Decl.

13

sole practitioner and the fact that Edelman is a small firm with few associates. *See* Pl. Supp., 7. Regardless of whether it was subjectively appropriate for partner-level attorneys to conduct this type of work at the Edelman and Kleinman firms, the Court must award attorneys' fees based on what is objectively reasonable under the circumstances – particularly given the limited overall recovery in this case. *F.H. Krear,* 810 F.2d at 1263 (noting an award of attorneys' fees under New York law must be reasonable); *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 CIV. 6094 PAE, 2014 WL 4670870, at *9 (S.D.N.Y. Sept. 19, 2014) (reducing fee where partners performed 70% of the work in a wage and hour litigation with state and federal claims).

Based on the foregoing, the Court concludes that a 95% reduction in the total fees incurred – minus the fees billed by Combs and Latturner – is warranted. *See Hensley,* 461 U.S. at 436-37, 103 S. Ct. at 1941. (noting that across-the-board percentage deductions are appropriate when awarding attorneys' fees); *Riordan,* 977 F.2d at 54 (holding that reduced fee award based on plaintiff's limited recovery was within the trial court's discretion). Accordingly, the Court recommends that Class Counsel be awarded a total of $19,316.35 in attorneys' fees.[5]

### C. **Costs and Expenses**

As noted above, the Settlement Agreement authorizes Plaintiff to seek reimbursements for reasonable costs and expenses, including "expert[s] [fees], filing fees, transcripts, subpoenas, service of process, and similar typical expenses."

---

[5] This figure was calculated by subtracting the fees billed by Combs and Latturner – $21,000 and $2,100 respectively – from the total $409,427.00 fees incurred by Class Counsel and further subtracting 95% from the result.

Settlement Agreement, ¶ 18. Class Counsel seeks an award of $41,117.61 in costs. *See* Pl. Mot., 1.

"Except in rare circumstances in which some important state interest is implicated," the availability of costs in an action in federal court is controlled by federal law. *BASF Corp. v. Prime Auto Collision Inc.*, No. 20-CV-4797, 2022 WL 704127, at *9 (E.D.N.Y. Mar. 9, 2022). As a general matter, the Second Circuit has held that, "attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). Reasonable expenses include court filing fees, process servers, postage and transcripts. *Hanover Ins. Co. v. D'Angelo*, No. CV 13-4301, 2018 WL 2729248, at *2 (E.D.N.Y. Mar. 23, 2018) (citation omitted). The party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." *Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting *Pennacchio v. Powers*, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. Jul. 21, 2011)).

Here, Class Counsel have provided itemized documentation – as well as receipts and invoices – of the costs incurred throughout this litigation. *See* Edelman Decl., App. H, 116-145; Kleinman Decl., Ex. 1. These expenses include postage, filing fees, process servers, court reporters and expert fees. *See* Edelman Decl., App. I; Kleinman Decl., Ex. 1. The Court concludes that these expenses are recoverable and recommends that Plaintiff be awarded $41,117.61 in costs.[6]

---

[6] Defendants argue that fees charged by "Interactive Counseling" are not recoverable because expert fees are not recoverable under Fed. R. Civ. P. 54(d)(1) unless there is "explicit statutory or contractual

15

### III. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Plaintiff's Motion be granted in part and denied in part and that Class Counsel be awarded $19,316.35 in attorneys' fees and $41,117.61 in costs, for a total of $60,433.96.

### IV. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within the specified period waives the right to appeal the District Court's order. *See Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:    Central Islip, New York
              July 18, 2024

                                             /s/ Steven I. Locke
                                             STEVEN I. LOCKE
                                             United States Magistrate Judge

---

authorization." Def. Supp., 6-7. Given that the Settlement Agreement specifically permits the recovery of expert fees, Defendants' argument is of no moment. *See* Settlement Agreement, ¶18.

16